IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> EXECUTIVE DIRECTOR S. GODINEZ, ) <br> ASSISTANT DIRECTOR RAMIRO, ) <br> SUPT. DIV. 9 THOMAS, SHERIFF ) <br> TOM DART, and COOK COUNTY, ) <br> ) <br> Defendants. ) | Case No. 10 C 6899 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Leonard Williams, a former pretrial detainee at the Cook County Jail, has brought a *pro se* lawsuit pursuant to 42 U.S.C. §1983. Williams claims that Cook County, Sheriff Tom Dart, the Jail's executive director Salvador Godinez, assistant director Ramiro, and Division Nine Superintendent Thomas violated his constitutional rights during his confinement. Specifically, Williams alleges that in 2008-09, the defendants were deliberately indifferent to the fact that the light in his cell repeatedly malfunctioned, leaving the cell dark for extended periods, and that from January through July 2009, he repeatedly sought medical care for vision problems and severe headaches but was ignored until early July 2009.

Defendants have moved for summary judgment. Their motion, however, addresses only Williams' claim regarding the light in his cell; they do not challenge his medical care claim. For the reasons stated below, the Court grants defendants' motion,

but the case survives based on the claim for denial of medical care.

**Facts**

Because the defendants have moved for summary judgment, the Court views the facts in the light most favorable to Williams and draws reasonable inferences in his favor.

Williams was held at the Jail while awaiting disposition of criminal charges against him. In November 2008, Williams was housed in cell 1362 in Tier 1-C of Division Nine. The lights went out in his cell and the neighboring four cells in his gallery. He and other detainees complained to correctional officers, who said they would put in work orders to have the problem corrected. Approximately eight days later, electricians came to the tier, and the lights were restored. However, the lights went out again two days later in the same five cells.

Sometime in December 2008, Williams and his cell mate were moved to cell 1359 due to the lighting problem in cell 1362. The move did not solve the problem; Williams says that the lights in his cell went out twelve to fifteen times over the next four to five months. Each time the lights went out, he complained, correctional officers said they would put in a work order, and the lights stayed out from one ti three weeks, until an electrician eventually came to restore the generator and the lights came back on.

Williams alleges that during this period, he repeatedly asked for grievance forms but was told none were available. He says that in January 2009, he wrote a letter to executive director Godinez and one to assistant director Ramiro in which he explained the problems he was experiencing and claimed that his constitutional rights were being violated. Williams also says that in December 2008, while still housed in Tier 1-C, he

spoke to defendant Thomas, the superintendent of Division Nine, about the lighting problem on the tier. Thomas told Williams that he would talk to the correctional officers about putting in work orders. Williams concedes that he did not follow up with Thomas, Godinez, or Ramiro.

Williams says that there was only one light bulb in his cell. The "day room" for detainees on the tier had its lights on all day, but Williams says that his cell did not get light from that source, because the only opening was the chuck hole in the cell door. He was, however, allowed to leave his cell each day for two hours to go to the day room. Williams says that was also able to read books everyday in his cell – presumably during daylight hours.

On April 28, 2009, Williams and his cell mate were moved from cell 1359 to a cell on tier 1-A, so that an electrician could go through every cell on tier 1-C to determine what the problem was. That same day, Williams says, he learned that the lights had finally gone back on in his previous cell and that the electricians discovered that there was a short circuit in wiring that was inside the cell walls.

Williams says that starting in or about January 2009, he began to experience what he refers to as temporary blindness for a couple of minutes when he woke up each morning. Beginning in January 2009, Williams alleges, he repeatedly asked the correctional officers on his tier for medical care for his eye problems. He also asked a couple of lieutenants for medical care, and they told him to submit a "medical slip." Williams says, however, that he was unable to submit a medical request slip because none were available on the tier. Williams finally saw a doctor on July 3, 2009. The doctor prescribed him caffeine pills and Ibuprofen.

During the relevant time period, Williams was going back and forth to court. He did not mention the lighting problem to his lawyer, judge, assistant's state's attorney, or the deputy that transferred him from Division Nine to court. Williams also filed a grievance on January 19, 2009, while housed in cell 1359, concerning an incident where he was sprayed with a fire extinguisher. This grievance made no mention of a lighting issue in Williams' cell.

On April 14, 2010, after he was transferred to the Illinois Department of Corrections, Williams saw Dr. Brian Ross, an optometrist, at Lawrence Correctional Center. Dr. Ross treated Williams on five separate occasions. Dr. Ross says in an affidavit that Williams did not complain that his blurry vision was a result of the lighting problem in his cell at the Cook County Jail. Dr. Ross diagnosed Williams with "corneal guttata" as the cause of his blurred vision and testified that nothing from his diagnosis or treatment of Williams indicated that he suffered from an eye condition due to his stay at Cook County Jail.

Williams has filed a motion to compel discovery in which he seeks an order compelling defendants to produce the following records: work orders for tier 1-C from June 2008 through June 2010; log books for the tier from June 2008 through June 2009; documents relating to procedures to be followed for complaints of inadequate lighting; the names of officers who worked in Division 9 on March 12, 2009, when he claims he was forced back into a dark cell; and a photograph of how cell 1359 looks on the inside between 5 p.m. and 10 p.m. (to illustrate how dark it was).

## Discussion

As indicated earlier, defendants have moved for summary judgment on Williams'

4

claim regarding the conditions in his cells but not on his claim for denial of medical care. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The mere existence of a factual dispute, by itself, is insufficient to prevent summary judgment. *Id*. at 248. Rather, only disputes over material facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

1. **Compliance with Rules**

As an initial matter, defendants argue that due to Williams' failure to strictly comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1, the Court should deem defendants' facts admitted. The Court has the discretion, however, not to apply those rules strictly. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 527 (7th Cir. 2000); *Dade v. Sherwin–Williams Co.,* 128 F.3d 1135, 1140 (7th Cir. 1997). Because Williams is proceeding *pro se* and has made a genuine effort to comply with the rules in his responsive submissions, the Court will disregard his technical noncompliance. The Court notes that Williams' entire response to the summary judgment motion is submitted under oath and thus amounts to an affidavit.

5

## 2. Physical injury

Defendants also argue that Williams cannot show a physical injury and that this bars his claims. Under the Prison Litigation Reform Act, "no Federal Civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997(e). Williams alleges that the poor lighting conditions caused him to suffer eye problems, a physical injury. Though Williams is not competent to testify regarding medical causation, his own testimony tends to show a temporal connection between the absence of lighting in his cells and the onset of his blurred vision. Given these circumstances, the Court will not find Williams' claim to be foreclosed by the PLRA's physical injury requirement.

## 3. Deliberate indifference

Incarcerated persons are entitled to confinement under humane conditions which provide for their "basic human needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Williams cites both the Eighth and Fourteenth Amendments, but the Fourteenth Amendment's Due Process Clause is the source of this right for Williams, because he was a pretrial detainee during the relevant events. *Id.* (citing *Bell v. Wolfish,* 441 U.S. 520, 535–37 (1979)). That said, courts still look to Eighth Amendment case law in addressing the claims of a pretrial detainee, because the protections provided by the Due Process Clause are at least as broad as those that the Eighth Amendment provides to convicted prisoners, and the Supreme Court has not yet determined exactly how must additional protection the Fourteenth

6

Amendment affords to pretrial detainees. *Rice ex rel. Rice*, 675 F.3d at 664.

A claim that the conditions of a prisoner's confinement were constitutionally inadequate proceeds through a two-step inquiry. The first question is whether the adverse condition was sufficiently serious, such that the prisoner was deprived of a "minimal civilized measure of life's necessities." *Id.* at 664-65. If the answer is yes, the second question is whether correctional officials were deliberately indifferent to the adverse condition. *Id.* at 665. An official is deliberately indifferent if he is subjectively aware of the adverse condition but consciously disregards it. *Id.* If the plaintiff cannot satisfy one component of the test or the other, he cannot prevail. *See, e.g., Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994).

Williams cannot establish that any of the defendants possessed the requisite state of mind. To satisfy this component of the test, a plaintiff must show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan¸* 511 U.S. 825, 837 (1994). Negligence, even gross negligence, is insufficient to establish deliberate indifference. *See Rapier v. Harris,* 172 F.3d 999, 1006 (7th Cir. 1999); *Salazar v. City of Chicago,* 940 F.2d 233, 240 (7th Cir. 1991).

Williams has failed to provide evidence from which a reasonable jury could find that any of the defendants was deliberately indifferent to the lighting problem in his jail cells. He concedes that correctional officers put in work orders to have electricians repair the malfunctioning lights and that electricians indeed repaired them on each

7

occasion – though not as quickly as one might hope or expect. Although Williams complains about the lack of a timely response, his testimony also indicates that he was allowed to change cells when he asked to do so. Given those circumstances, no reasonable fact finder could find any of the correctional officers to have been deliberately indifferent to the conditions in Williams' cell. (The Court notes that Williams did not name any correctional officers as defendants, but had he done so, the Court would grant summary judgment in their favor.)

With regard to the named defendants, Williams spoke to Superintendent Thomas only once, in December 2008, about the lighting problem in his cell. Thomas informed him that he was going to talk to the officers about putting in work orders. The Court also notes that this conversation appears to correspond with Williams' transfer to a different cell on Tier 1-C, suggesting that Thomas did follow up. Williams does not contend that he had any further discussions with Thomas or that he advised Thomas that the problem had not been corrected.

As indicated earlier, Thomas says that he wrote a letter to executive director Godinez and one to assistant director Ramiro in January 2009. He offers no evidence, however, that he followed up with either of them.

Finally, Williams has offered no evidence that Sheriff Dart was even aware of the lighting problem, let alone that he was deliberately indifferent to it.

The uncontradicted evidence reflects that each time the lights went out, Williams made a complaint; correctional officers sent in work orders; electricians came to the tier – albeit only after a week or more – to conduct repairs and were able to restore lighting; and that when the problem recurred, Williams was moved to a different tier. No

reasonable fact finder could determine that any of the named individual defendants were deliberately indifferent.

This leaves Cook County, which can be liable on the conditions of confinement claim only if there was an underlying constitutional violation. *See, e.g., Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). Because the Court has determined that no reasonable fact finder could determine that any of the individual defendants violated Williams' constitutional rights, his claim against the County fails as well.

The Court denies as moot Williams' motion to compel discovery. All of the discovery concerns his conditions of confinement claim, not his claim for denial of medical care. None of that requested discovery could have made a difference on the current summary judgment motion.

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion to compel as moot [docket no. 54] and grants defendants' motion for summary judgment [docket no. 55] with regard to plaintiff's conditions of confinement claim. The case remains pending on plaintiff's claim for denial of medical care. A status hearing is set for August 20, 2012 at 8:30 a.m. to set a schedule for further proceedings, and to discuss the possibility of settlement. Defendants' counsel is directed to make arrangements for plaintiff to participate by telephone.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 6, 2012